**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

LISA CIAMPAGLIA,                              :

           Petitioner,          :          CRIMINAL NO. 3:18-00016-2

      v.                                    :          (JUDGE MANNION)

UNITED STATES OF AMERICA,          :

          Respondent.          :


## MEMORANDUM

Pending before the court is petitioner Lisa Ciampaglia's Motion to Vacate, Set Aside, or Correct her 60-month sentence of imprisonment imposed on November 5, 2020. (Doc. 174). Ciampaglia is currently serving her prison sentence at FPC Alderson in West Virginia and her BOP projected release date is July 10, 2024. Ciampaglia's motion is filed pursuant to 28 U.S.C. §2255 and is based upon claims of ineffective assistance of counsel. Ciampaglia claims that her counsel was ineffective for failing to provide a complete analysis of her safety valve eligibility to the court at sentencing; failing, at sentencing, to object to facts not on the record, thereby allowing her due process rights to be violated; failing to identify Ciampaglia's cognitive deficits, which directly impacted her ability to understand the significance of the mandatory minimum sentence; failing to employ an investigator or "drug

expert" to aid in the safety valve argument at sentencing; failing to negotiate a cooperation plea agreement; and, allowing Ciampaglia to enter a guilty plea without a properly written appellate waiver. Ciampaglia also claims that the court erred in its application of the safety valve standard and in its conduction of a Rule 11 colloquy.

Upon the court's review of the record in this case, Ciampaglia's §2255 motion, (Doc. 174), as well as the briefs of the parties, Ciampaglia's motion will be **DENIED** without the need for an evidentiary hearing.

I.   BACKGROUND

On March 18, 2020, a one-count Superseding Indictment was returned against Ciampaglia in connection with the overdose death of Brandon Snyder. It was alleged that on or about May 1, 2016, and continuing to on or about November 30, 2017, Ciampaglia "did knowingly and intentionally combine, conspire, confederate and agree with other persons, both known and unknown, to commit the following offenses against the United States, namely, to knowingly, intentionally and unlawfully distribute, and possess with intent to distribute, 40 grams and more of a mixture, and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). All

in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B)."
(Doc. 96). On June 18, 2020, Ciampaglia pleaded guilty to the Superseding
Information count. (Doc. 110).

A sentencing hearing before this court was held on November 5, 2020,
where Ciampaglia was sentenced to a total of 60 months imprisonment
followed by a four-year term of supervised release. (Doc. 139). Thereafter,
Ciampaglia filed her 28 U.S.C. §2255 motion to vacate, set aside, or correct
her 60-months imprisonment sentence, (Doc. 174); the government filed a
brief in opposition (Doc. 190), and Ciampaglia replied (Doc. 197).


## II.   LEGAL STANDARD

When a district court imposes a sentence on a defendant who believes
"that the sentence was imposed in violation of the Constitution or laws of the
United States, or that the court was without jurisdiction to impose such
sentence, or that the sentence was in excess of the maximum authorized by
law, or is otherwise subject to collateral attack, [the defendant] may move
the court which imposed the sentence to vacate, set aside or correct the
sentence." 28 U.S.C. §2255; *see United States v. Eakman*, 378 F.3d 294,
297-98 (3d Cir. 2004).

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice of thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b).

A §2255 motion "is addressed to the sound discretion of the district court." *United States v. Williams*, 615 F.2d 585, 591 (3d Cir. 1980). "[A] motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." *Paulino v. United States*, 2010 WL 2545547, *2 (W.D. Pa. June 21, 2010) (citations omitted).

"In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *United States v. Bates*, 2008 WL 80048, *2 (M.D. Pa. Jan. 7, 2008) (quoting *Mallet v. United States.*, 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." *United States. v. Ayers*, 938 F.Supp.2d 108, 112 (D.D.C. 2013) (citation omitted).

- 4 -

Ciampaglia's instant claims fall within the purview of §2255 since they challenge the validity of her sentence. *Bates*, 2008 WL 80048, *3 ("Claims of ineffective assistance of counsel may be brought in the first instance by way of a §2255 motion regardless of whether the movant could have asserted the claim on direct appeal.") (citing *Massaro v. U.S.*, 538 U.S. 500, 504, 123 S.Ct. 1690 (2003)).

Additionally, "Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing", "[r]ather, Section 2255 is implicated only when the alleged error raises 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Williams v. United States*, 2016 WL 6892375, *2 (M.D. Pa. Nov. 22, 2016) (internal citations omitted).

III.   **DISCUSSION**[1]

In her §2255 motion, Ciampaglia raises a multitude of claims centered around ineffective assistance of counsel and related (alleged) court errors. As outlined below, Ciampaglia's claims will be broken down into two

---

[1] This court has jurisdiction over Ciampaglia's motion under §2255 pursuant to 28 U.S.C. §§1331 and 2241.

categories below: issues relating to her change of plea and issues relating to sentencing.

The relevant legal standards for claims related to ineffective assistance of counsel are as follows. The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." U.S. Const. Amend. VI. The U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-prong test to evaluate the effectiveness of the assistance of counsel. In the first prong, the defendant must show "that counsel's performance was deficient," *id.* at 687, and must prove this by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In addition, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689.

In the second prong, a defendant must show that counsel's deficient performance "prejudiced the defense," because "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, *see United States v. Valenzuela-Bernal*, 458 U.S. 858, 866-67 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693.

Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* at 694. Thus, to state a successful claim for ineffective assistance of counsel, petitioner must show "both that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." *Ayers*, 938 F.Supp.2d at 113 (citing *Strickland*, 466 U.S. at 700).

With those standards as a backdrop, Ciampaglia's ineffective assistance arguments related to her change of plea hearing and sentencing are addressed in turn.

### A. Allegations of Ineffective Assistance of Counsel with regard to Change of Plea Hearing

Ciampaglia claims that her trial counsel was ineffective in failing to identify her cognitive deficits; in failing to object to the court's Rule 11 colloquy, which she claims was ineffective in establishing whether she changed her plea knowingly, intelligently, and voluntarily; and in allowing her to enter a guilty plea without a properly written appellate waiver. Applying the *Strickland* test, Ciampaglia has not raised a legally sufficient Sixth Amendment claim.

With regard to trial counsel's alleged failure to identify Ciampaglia's cognitive deficits, Ciampaglia simply fails to meet her burden of proof—"the burden is on petitioner to demonstrate that the representation provided by his counsel was constitutionally inadequate." *United States v. Hines*, 470 F.2d 225, 231 (3d Cir. 1972).  Ciampaglia's argument involves speculation and self-contradiction in her asserted facts. Ciampaglia simultaneously

claims that her counsel met with her for at most fifteen minutes,[2] skimmed the guilty plea agreement and told her to sign it. But she also avers that "even after *reading portions of the guilty plea agreement*" she did not understand it. (*See* Doc. 174) (emphasis added). In any event, Ciampaglia has not demonstrated constitutional inadequacy on the part of her counsel.

Moreover, Ciampaglia's assertion that she did not understand the reality of a mandatory minimum sentence or the fact that she would not be able to appeal is against the weight of the record evidence. Ciampaglia answered affirmatively to questions gauged at assessing her understanding and mental competency, and her ability to understand was both never argued by counsel nor concluded by the court. (Doc. 143). The court made a finding that Ciampaglia was competent to enter her plea.

Ciampaglia's claims that the court's Rule 11 colloquy was insufficient in establishing that she was entering into the guilty plea knowingly, intelligently, and voluntarily and that trial counsel was ineffective in objecting to the insufficiency of the colloquy also fail. Once again, Ciampaglia does not satisfy her burden of proof. She has not identified a "fundamental defect which inherently results in complete miscarriage of justice," *Williams v.*

---

[2] At various points throughout her briefing, Ciampaglia describes the meeting as fifteen minutes long, ten minutes long, and no more than ten minutes long.

*United* States, 2016 WL 6892375, *2 (M.D. Pa. 2016), nor has she shown that her counsel's representation fell below an objective standard of reasonableness. A review of the record reveals her counsel was not constitutionally ineffective and that the Rule 11 colloquy was sufficient.

It is apparent that the court administered an effective colloquy and that there was no reason for Ms. Stepkovitch (prior counsel) to object. Ms. Ciampaglia answered affirmatively to questions regarding, for example, her cognitive ability, her understanding of the trial rights she was giving up, and her understanding of the nature of the plea deal. (Doc. 143). When given the opportunity to ask questions about anything she might not have understood in the colloquy, Ciampaglia indicated that she had none, expressing that she understood the proceedings thoroughly. *Id.* Ciampaglia's affirmative answers coupled with the court's already established analysis of her cognitive capacities make it clear that Ms. Stepkovitch operated within an "objective standard of reasonableness." The fact that no attorney on either side nor the court questioned the legitimacy of her testimony regarding her understanding also supports the fact that Ms. Stepkovitch performed her duty professionally and sufficiently.

Finally, Ciampaglia's claim that trial counsel's assistance was ineffective because she allowed Ciampaglia to enter a guilty plea without an

appropriately written appellate waiver also fails. Ciampaglia argues that the waiver is overly broad and waives constitutional rights, which she claims is impossible and renders the waiver invalid and unenforceable. However, this provision is not out of the ordinary; indeed, one can waive constitutional rights to appeal, including the right to appeal unconstitutional sentences. *See generally United States v. Barnes*, 953 F.3d 383 (5th Cir. 2020). She also points out that the waiver is "silent on her right to collaterally attack her conviction or sentence pursuant to an ineffective assistance of counsel claim." (Doc. 174 at 35). But the purported silence on that issue does not take the plea provision, or counsel's agreement to that provision, out of the realm of reasonableness. Ciampaglia's claim here will thus be denied.

For all the aforementioned reasons, Ciampaglia's motion to vacate based on ineffective assistance of counsel with regard to failure to identify cognitive deficits, failure to object to an insufficient Rule 11 colloquy, and failure to object to an inappropriately written appellate waiver will be denied.

### B. Allegations of Ineffective Assistance of Counsel with regard to Sentencing

Next, Ciampaglia claims that her trial counsel was ineffective in arguing her safety valve eligibility, failing to hire an investigator or "drug expert," not objecting to facts stated at sentencing that were not put on the record at her change of plea hearing, and failing to negotiate a cooperation plea

agreement. Applying the *Strickland* test again, the court rejects Ciampaglia's arguments.

Ciampaglia argues that her counsel was ineffective in arguing her eligibility for a the "safety valve" under U.S.S.G. §5C1.2. Her argument fails because, disregarding any argument as to whether Ms. Stepkovitch could have argued it any better, it is clear the outcome would not have been any different had it been argued differently. *See Strickland v. Washington*, 466 U.S. 668 (1984).

"A defendant convicted of conspiracy may be sentenced for relevant conduct committed by a co-conspirator in furtherance of the conspiracy only if that conduct was reasonably foreseeable by the defendant." *United States v. Swiney*, 203 F.3d 397 (6th Cir. 2000) (citing to U.S.S.G. §1B1.3, Application Note 1). Furthermore, if the court finds that the defendant meets the criteria in 18 U.S.C. §3553(f)(1)-(5), then she is to be sentenced pursuant to the sentencing guidelines without regard to any statutory minimum sentence. Relevant here is subsection (f)(3), which imposes sentencing pursuant to the sentencing guidelines if the court finds that the offense resulted in a death or serious bodily injury.

Here, Ciampaglia, citing *Swiney*, disputes that the death of Brandon Snyder was reasonably foreseeable to Ciampaglia and that it occurred in

- 12 -

furtherance of the joint conspiracy. The court disagrees. Moreover, the court has already addressed this issue at sentencing, and a review of that proceeding reveals the court did not err.

Given the current opioid epidemic and its media coverage, the court cannot imagine that anyone trafficking in fentanyl could not reasonably foresee that a death could result. Ciampaglia was involved in a long-lasting operation with Sean Scott, whom she lived with, in which they trafficked fentanyl. Just because Sean Scott sold to Matthew Snyder, who gave the fentanyl to his brother Brandon Snyder, who then tragically died, does not mean that Ciampaglia's responsibility is severed, as she was the source that gave Scott the fentanyl for distribution. Simply, being a few steps removed from the sale and not knowing the exact person Scott would sell the fentanyl to does not absolve Ciampaglia. Further, the death clearly occurred as a result of the jointly undertaken activity of Scott and Ciampaglia. They worked together as dealers, and she provided the fentanyl that was eventually used by Snyder. No matter how counsel argued this issue, the law demanded Ciampaglia was not safety-valve eligible.

As an aside, Ciampaglia also notes that the court stated that it was only sentencing her to the minimum 60-month sentence because they had to. Ciampaglia offers this to suggest that the court disagreed that Ciampaglia

was culpable and that given more effective argument by counsel, they may have granted the safety valve. The court clearly conveyed that its disagreement with the minimum sentence was not based on any of Ms. Ciampaglia's conduct before arrest, but rather her positive conduct following arrest. (Doc. 144). Ciampaglia's argument that her counsel was ineffective in arguing her safety valve eligibility will thus be denied.

Ciampaglia also argues that counsel should have hired an investigator or "drug expert" to aid in her safety valve eligibility argument. The right to effective assistance of counsel does not mean that the court must "guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel." *Roe v. Flores Ortega*, 528 U.S. 470, 485 (2000). Here, hiring an investigator or expert may have theoretically helped Ciampaglia, however, there is no reason to conclude that her counsel should have, without any doubt, hired one. Ciampaglia's request here is essentially that the court should guarantee ideal assistance of counsel, which is neither the court's obligation nor is it possible. Regardless, Ciampaglia has not demonstrated how the testimony of a drug expert could have rendered her legally invalid safety valve argument suddenly valid.

Ciampaglia also argues that counsel was ineffective in failing to object to facts stated at sentencing which were not put on the record at her change of plea hearing. However, counsel did make arguments to this effect; perhaps not in the way present counsel thinks would have been ideal, but prior counsel's argument on this score in no way fell below the objective standard of reasonableness. Thus, Ciampaglia's claim of ineffective of counsel regarding failure to object to facts at sentencing that were not put on the record at the change of plea hearing will be denied.

Finally, Ciampaglia argues that counsel should have negotiated a cooperation plea agreement. However, Ms. Stepkovitch did attempt to get cooperation points for Ms. Ciampaglia. But Ciampaglia was ineligible for a cooperation plea because, as the factual record shows, she did not cooperate with authorities when given the opportunity to. (*See* Doc. 190 at 3). Nothing provided by Ciampaglia after November 1, 2017 (the day that authorities discovered Scott and Ciampaglia's continued drug trafficking activities and non-cooperative behavior with the Government's larger investigation) was deemed substantial by the Government, which was within the Government's discretion to determine.

Present counsel suggests that because the Government did not call Ciampaglia to testify to a grand jury, but did call Sean Scott to testify, that

Ciampaglia therefore could not have been "so intricately involved in this conspiracy," (Doc. 174 at 33), and that, therefore, she should be eligible for the safety valve. This does not follow. If the Government deemed Ciampaglia's assistance unsubstantial and her overall behavior as uncooperative, and were instead able to get what they needed from Sean Scott, it does not follow that Ciampaglia was necessarily not as involved in the conspiracy as the Government suggests. Not sufficiently cooperating with authorities simply does not lead to the conclusion that Ciampaglia was not intricately involved in the conspiracy that led to Brandon Snyder's death. Counsel was not ineffective on this score either.

For all the aforementioned reasons, Ciampaglia's motion to vacate based on ineffective assistance of counsel with regard to failure to properly argue Ciampaglia's safety valve eligibility, failure to hire an investigator or "drug expert" to aid in arguing safety valve eligibility, failure to object to facts stated at sentencing that were not put on the record at her change of plea hearing, and failure to negotiate a cooperation plea agreement will be denied.

## IV.   <u>EVIDENTIARY HEARING</u>

Ciampaglia also requests an evidentiary hearing to establish any disputed facts. (Doc. 174 at 36). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b). *See United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992) (The court is required to conduct an evidentiary hearing to ascertain the facts "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.") (citation omitted). However, the court need not accept the petitioner's allegations as true if they "are unsupported by specifics [or] wholly incredible in the face of the record." *Patton v. United States*, 2010 WL 3191887, *1 (W.D. Pa. 2010) (citing *United States v. Estrada*, 849 F.2d 1304, 1307 (10th Cir. 1988)). A review of the motion, the traverse and the government's brief, as well as the law and the claims make it clear that Ciampaglia's allegations are without merit and in some cases frivolous. The court finds that Ciampaglia is not entitled to an evidentiary hearing because the record conclusively establishes that she is not entitled

to the relief sought in her §2255 motion. Therefore, the court, in its discretion, finds no reason to hold an evidentiary hearing.

## V.   CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, a COA will not issue because Ciampaglia has not shown either the denial of a constitutional right nor that jurists of reason would disagree with this court's resolution of her claims.

- 18 -

**VI.**   <u>CONCLUSION</u>

In light of the foregoing, the court will **DENY** Ciampaglia's §2255 motion in its entirety, (Doc. 174), without an evidentiary hearing. Further, no COA will issue. An appropriate order shall follow.

_s/ Malachy E. Mannion_
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 11, 2023**
18-16-02

- 19 -